**COMMONWEALTH of Pennsylvania,**
**Appellant,**

**v.**

**Samuel CORDOBA, Appellee.**

Superior Court of Pennsylvania.

Submitted May 8, 2006.

Filed July 7, 2006.

---

Douglas J. Waltman, Asst. Dist. Atty., Reading, for Com., appellant.

Tommaso V. Lonardo, Allentown, for appellee.

BEFORE: JOYCE, BENDER and JOHNSON, JJ.

OPINION BY BENDER, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the order granting Samuel Cordoba's (Appellee) motion for Habeas Corpus relief and dismissing the sole charge against him for recklessly endangering another person. For the reasons that follow, we reverse.

¶ 2 The Court of Common Pleas summarized the facts of this case as follows:

The alleged victim, an adult male, had a consensual sexual relationship with the defendant for about two weeks during the month of June 2003. The defendant and the alleged victim engaged in oral sex approximately five to six times. NT at 18–19. The alleged victim testified that he and the defendant performed oral sex on each other during which time neither partner used a condom. Several days later the alleged victim found prescription medication bottles bearing the defendant's name. The victim suspected that the medication was treatment for the [HIV] virus. Approximately four to five days to a week after the last time the defendant and the alleged victim had oral sex with each other, the victim "confronted" the defendant with the suspected HIV–AIDS prescription medication. NT at 51. The victim testified that he threatened to "expose" (Defendant) to the people at the bar where they had met each other. NT at 26–27. During this verbal confrontation, the defendant admitted that he had, "HIV or that he had AIDS." NT at 28. The alleged victim became quite upset upon learning that the defendant may be HIV positive and subsequently he reported this to the police because he was very angry that the defendant failed to inform him that he was HIV positive before they engaged in consensual oral sex with each other. Since this episode, the alleged victim has been tested every six months to determine if he has the HIV virus and each time the results were negative. NT at 45.

It is an important note that the victim testified that the defendant and he did not exchange semen and that he never observed an open cut or sore anywhere on the defendant's body during the time they engaged in consensual sex. The only exchange of bodily fluids occurred when the defendant ejaculated semen on the alleged victim's face and chest. The victim testified that he did not ingest any semen. NT at 72.

Trial Court Opinion (T.C.O.), 1/17/06, at 4–5. The Commonwealth filed the Complaint underlying this appeal on October 13, 2004; however, there is a procedural history that precedes the Complaint. This history is pertinent, as it serves as one of the alternative bases for the trial court's decision to grant the motion for Habeas Corpus relief.

¶ 3 In particular, both parties and the trial court are in agreement that the Commonwealth had filed a previous complaint, which the court dismissed on a previous motion for Habeas Corpus relief due to its determination that the Commonwealth had failed to establish a *prima facie* case of recklessly endangering another person. In its subsequent opinion, the trial court stated various reasons for granting Appellee's motion, yet it concluded that even if none of these reasons were valid, the motion should nonetheless have been granted because the Commonwealth "did not establish that the defendant was the likely perpetrator of the crime." T.C.O., 8/2/04, at 7. The court reached this conclusion because "[a]t the Omnibus Pretrial hearing, there was no identification of the de-

fendant by any of the Commonwealth's witnesses." *Id.*

¶ 4 The Commonwealth filed an appeal to this Court, but it subsequently withdrew the appeal and then re-filed the identical charge against Appellee. At the preliminary hearing for the re-filed charge (which underlies this appeal), the Commonwealth introduced testimony from the alleged victim (J.C.) in which J.C. identified Appellee as the perpetrator. N.T., 2/2/05, at 16–17. Appellee then filed another motion for Habeas Corpus relief and the trial court granted the motion, concluding that the Commonwealth still had not made out a *prima facie* case and that it was improper for the Commonwealth to withdraw its appeal and re-file the charge against Appellee. The Commonwealth then filed the instant appeal raising the following two questions for our review:

1. Whether the lower court erred in granting Habeas Corpus Relief?

2. Whether the lower court erred in dismissing the prosecution with prejudice?

Brief for Commonwealth at 4.

 ¶ 5 For the sake of clarity we shall first address the Commonwealth's second question in which it claims that the trial court erred in determining that there was a procedural impropriety with the Commonwealth's decision to withdraw the appeal and re-file the charge. "In reviewing a trial court's order granting a defendant's petition for writ of habeas corpus, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." *Commonwealth v. Santos,* 583 Pa. 96, 876 A.2d 360, 363 (2005) (quotation marks omitted).

¶ 6 In its opinion, the trial court stated that the "Commonwealth's second prosecution should be barred on the grounds that it is contrary to our fundamental understanding of due process" because "the Commonwealth abused the appellate procedure by withdrawing it's [sic] first appeal to the Superior Court after receiving this Court's Memorandum Opinion in support of the dismissal of the charges." T.C.O., 1/17/06, at 10–11. The Commonwealth claims that the Assistant District Attorney who filed the Notice of Appeal did so without reviewing the transcripts because he or she had not yet obtained them. Brief for Commonwealth at 12. Furthermore, the Commonwealth alleges that when it discovered the absence of this crucial evidence regarding the identification of Appellee, it withdrew the appeal "to correct the deficiency in its *prima facie* case" and it did so "[r]ather than passively awaiting the potentially incomplete review ... by the Superior Court." *Id.* at 13.

 ¶ 7 We note that "[t]he finding of a *prima facie* case is the prerequisite for requiring the accused to stand trial for the charges leveled against him." *Liciaga v. Court of Common Pleas of Lehigh County,* 523 Pa. 258, 566 A.2d 246, 247 (1989). Therefore, "jeopardy does not attach until the prosecution has established a *prima facie* case and the accused is presented with the prospect of trial before a tribunal where his guilt or innocence will be determined." *Id. See also United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). More recently, this Court has stated: "[W]e find that the refiling of charges is a viable alternative to filing an appeal from the grant of a *habeas corpus* petition.... [R]efiling and rearrest are appropriate in those instances where the Commonwealth recognizes the

deficiencies in its case and seeks to correct the defect(s)." *Commonwealth v. Carbo,* 822 A.2d 60, 69 (Pa.Super.2003).

¶ 8 The question in this case is whether the Commonwealth's decision to file an appeal and then withdraw the appeal adversely impacted its right to re-file the charge with the additional testimony identifying Appellee as the perpetrator. We are aware of no violation of any of the Pennsylvania Rules of Appellate Procedure, and although Appellee devotes six pages of argument to his claim that the Commonwealth's actions violate or circumvent the Pennsylvania Rules of Appellate Procedure, not once does Appellee cite a single rule that has ostensibly been violated. Brief for Appellee at 12–18. Instead, Appellee relies more on hyperbole than reason by asserting that the Commonwealth "has acted in bad faith, with ill will, and total disregard for the law and a lack of respect for all the courts of this Commonwealth." *Id.* at 18.

¶ 9 Appellee wholly ignores the trial court's opinion in the first dismissal wherein it stated that it was granting the motion because, in part, none of the Commonwealth's witnesses identified Appellee as the perpetrator. Furthermore, Appellee does not acknowledge the Commonwealth's attempt to cure this deficiency in the hearing underlying this appeal wherein it introduced testimony from J.C. identifying Appellee as the perpetrator. Rather, Appellee ignores the record before us and repeatedly states that the Commonwealth introduced no new evidence when it re-filed the charge.

¶ 10 Under these facts, we discern no unfair advantage gained by the Commonwealth in withdrawing its appeal and re-filing the charge, nor prejudice to Appellee from this practice. The procedure followed by the Commonwealth, while perhaps unorthodox, is not contrary to our fundamental understanding of procedural due process. Accordingly, we conclude that the trial court erroneously granted the motion for Habeas Corpus relief on the basis that the Commonwealth had "abused the appellate procedure." T.C.O., 1/17/06, at 10.

¶ 11 We now review the trial court's determination that the Commonwealth failed to establish a *prima facie* case against Appellee, which is the issue that the Commonwealth sets forth in the first question presented for our review. In considering whether the Commonwealth established a *prima facie* case, we are guided by the following standard:

> A prima facie case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. In determining the presence or absence of a prima facie case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

> Stated another way, a prima facie case in support of an accused's guilt consists of evidence that, if accepted as true, would warrant submission of the case to a jury. Therefore, proof of the accused's guilt need not be established at this stage.

*Commonwealth v. Miller,* 810 A.2d 178, 181 (Pa.Super.2002) (citations omitted). In the instant case, the trial court determined that the Commonwealth had failed to establish a *prima facie* case against Appellee

for recklessly endangering another person, which is defined as follows:

### § 2705. Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705.

¶ 12 We begin with what we view as the trial court's policy considerations, which the court found to militate against criminalizing "the act of having consensual sex while knowingly carrying a sexually transmitted disease." T.C.O., 1/17/06, at 8. Initially, we are troubled by the trial court's characterization of the sex in this case as consensual. Certainly, in many areas the law recognizes a difference between informed consent and unknowing or involuntary consent. In particular, the criminal code codifies consent as a defense under 18 Pa.C.S. § 311 and it states that consent is ineffective when it is induced by deception. *See* 18 Pa.C.S. § 311(c)(4). Thus, it is a misnomer to say that the sex between Appellee and J.C. was consensual because Appellee did not inform J.C. of Appellee's HIV infection, a fact that certainly would have figured into J.C.'s reckoning whether he wished to have sexual relations with Appellee.

¶ 13 The trial court also concluded that "even if an HIV-positive individual informs his or her partner of this status prior to

engaging in unprotected sexual activity," he or she could still be prosecuted for recklessly endangering another person because "[c]onsent is not a defense to this statute" and this "could lead to absurd results." T.C.O., 1/17/06, at 9 (citing *Commonwealth v. Mathis,* 317 Pa.Super. 362, 464 A.2d 362 (1983)). However, this issue is clearly not before this Court, as Appellee never informed J.C. of Appellee's HIV-positive status. Furthermore, if and when the Commonwealth were to decide to prosecute an individual for such activity, it would certainly raise constitutional issues that are well beyond the scope of our decision here. Moreover, such a defendant may indeed have a defense under 18 Pa.C.S. § 311, and it is questionable whether *Mathis* would be applicable under such facts.[1]

¶ 14 Nor do we agree with the trial court's speculation that our legislature has not "criminalized the act of having consensual sex while knowingly carrying a sexually transmitted disease" because "those with HIV and AIDS carry a heavy burden, and to further stigmatize them would accomplish little." T.C.O., 1/17/06, at 8–9. It is important to remember that the Commonwealth is here prosecuting Appellee for a violation of 18 Pa.C.S. § 2705. This statute is worded broadly without reference to what types of "conduct" fall within its ambit. It is derived from Section 211.2 of the MODEL PENAL CODE, *see* 18 Pa.C.S. § 2705 Official Comment, which is intended to criminalize "reckless endangerment **by any means.**" MODEL PENAL CODE

---

1. An HIV-positive defendant facing prosecution for violation of a criminal statute arising from the defendant exposing another to his or her bodily fluids may also have a defense under the *de minimis* exception where the likelihood of transmission is minuscule. *See* 18 Pa.C.S. § 312 (stating, "The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant: ... (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction.").

§ 211.2 Explanatory Note (emphasis added).

¶ 15 We discern no ambiguity in the wording of Section 2705 and we find its prohibition to be explicit and clear.

> The Statutory Construction Act, 1 Pa. C.S. § 1501 *et seq.,* provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. The statute's plain language generally provides the best indication of legislative intent.... We will resort to other considerations to divine legislative intent only when the words of the statute are not explicit.

*Commonwealth v. Conklin,* 897 A.2d 1168, 1176 (Pa.2006) (citations omitted). *See also Commonwealth v. Tate,* 572 Pa. 411, 816 A.2d 1097, 1098 (2003) (stating, "It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute."). Consequently, we find no occasion to resort to the rules of statutory construction to discern whether certain conduct by HIV-positive individuals would be punishable under Section 2705.

¶ 16 However, if the legislature's intent was at issue, we find it equally plausible that it chose not to legislate in this area out of concern for infringing upon certain privacy rights and the difficulty of tailoring a statute in a manner narrow enough to withstand constitutional scrutiny and achieve the desired goal of deterring high risk behavior.[2] *See* Amy L. McGuire, *AIDS as a Weapon: Criminal Prosecution of HIV Exposure,* 36 Hous. L. Rev.

1787, 1789–90 (1999) (recognizing that "[m]any HIV-specific statutes in force today are poorly written and impose demands upon people living with HIV and AIDS in ways that may be unconstitutional" and that if a legislature enacts such laws, they must "fairly and clearly describe the prohibited behavior" so as "not to punish based upon the status of being infected with HIV–AIDS."). *See also* Thomas W. Tierney, *Criminalizing the Sexual Transmission of HIV: An International Analysis,* 15 Hasting Int'l & Comp. L. Rev. 475, 487 (1992) (stating, "To be effective, however, such laws must be clear in their content and only proscribe behavior that poses a serious public health risk. Unclear laws proscribing more than just behavior that poses a serious public health risk not only frustrate efforts to educate the public about AIDS, they also promote discrimination against HIV-infected persons."). For all of the foregoing reasons, we conclude that if certain conduct by an HIV-positive individual satisfies the elements of recklessly endangering another person, then the Commonwealth may prosecute that individual just as it would prosecute any other individual for committing acts that meet the elements of the crime.

¶ 17 We now review the trial court's conclusion that the Commonwealth failed to make out a *prima facie* case of recklessly endangering another person against Appellee because the Commonwealth did not establish each element of the crime. First, the trial court concluded that "the Commonwealth failed to satisfy the *'mens rea'* element" of recklessly en-

---

2. *But see* 18 Pa.C.S. § 2703 (defining Assault by Prisoner to include conduct where an HIV positive prisoner causes another individual to come into contact with certain bodily fluids of that prisoner); 18 Pa.C.S. § 5902 (increasing the grading of prostitution if the defendant knows that he or she is infected with HIV).

dangering another person because "there is no evidence that the defendant knew he was HIV positive when he last had sexual contact with the alleged victim." T.C.O., 1/17/06, at 5. "The mens rea for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Klein*, 795 A.2d 424, 427–28 (Pa.Super.2002) (quotation marks omitted).

¶ 18 J.C. testified that he had oral sex with Appellee on several occasions in early June of 2003. On approximately June 20, 2003, J.C. found two bottles of prescription medication for HIV that belonged to Appellee. N.T., 1/2/05, at 23–26. Both bottles had been filled on June 9, 2003. *Id.* at 24. J.C. also testified that he first had sex with Appellee on June 9th or 10th, and that he last had sex with him a "couple of days" before J.C. found the medicine. *Id.* at 35, 50. From the foregoing, it is clear that Appellee had sex with J.C. after Appellee had obtained the medication prescribed to combat the HIV virus. Furthermore, upon discovering the medication, J.C. confronted Appellee and he admitted that he was infected with HIV. *Id.* at 28.

¶ 19 Viewing this evidence in a light most favorable to the Commonwealth, we conclude that the Commonwealth established that Appellee knew that he was infected with HIV at the time that he had sex with J.C. A fact finder could infer from the testimony that Appellee sought medical attention prior to receiving the prescriptions for the medication, that he was diagnosed as HIV-positive, and that he received prescriptions for medications to treat the virus, which he filled on June 9, 2003. The record shows that Appellee and J.C. had oral sex after June 9, 2003, and therefore the trial court erred in determining that there was no evidence to show that Appellee knew he was HIV positive when he last had sex with J.C.

¶ 20 Next, the trial court concluded that the Commonwealth had also failed to establish that even if Appellee knew that he was HIV-positive, there was no evidence that showed "the means by which HIV is transmitted." T.C.O., 1/17/06, at 7. The trial court explained that although the Commonwealth had requested that the magistrate take judicial notice of the risk of transmission of HIV by oral sex and the magistrate took notice, the Commonwealth made no such request for judicial notice to the trial court, and had the Commonwealth made such a request, the court would have denied it. This is an important point because "[t]o sustain a conviction under Section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Hopkins*, 747 A.2d 910, 915–16 (Pa.Super.2000) (citation omitted).

¶ 21 On appeal, the Commonwealth claims that "[i]t cannot reasonably be disputed that" "HIV can be transmitted by exposure to bodily fluids of an infected person." Brief for Commonwealth at 11. We agree. Certainly, not every exposure to bodily fluids of an HIV-positive person will result in transmission; there are degrees of exposure that correspond to different risks of transmission.[3] However, in order to make out a *prima facie* case for

---

**3.** *See, e.g.,* Michael L. Closen et al., *Criminalization of an Epidemic: HIV–AIDS and Criminal Exposure Laws,* 46 Ark. L. Rev. 921, 941 (1994) (mentioning the risk of transmission of

recklessly endangering another person, the Commonwealth need only establish that the defendant's conduct placed *or may have placed* another in *danger* of serious bodily injury or death. *See* 18 Pa.C.S. § 2705. Consequently, the Commonwealth was not required to show that Appellee's action actually placed J.C. in danger. Instead, in order to establish a *prima facie* case, the Commonwealth was only required to establish that Appellee's conduct *may have placed* J.C. in "danger," which is defined as: "the possibility of suffering harm or injury," THE NEW OXFORD AMERICAN DICTIONARY 431 (2001); or "the state of being exposed to harm." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 573 (1966). Accordingly, applying a literal interpretation of the elements of the offense, the Commonwealth was required to establish that there may have been the possibility or risk of harm, regardless of the likelihood of the manifestation of that harm.

¶ 22 The danger must be one of death or serious bodily injury. "Our law defines serious bodily injury as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth v. Klein,* 795 A.2d 424, 427 (Pa.Super.2002) (emphasis added) (quotation marks omitted). It is well known that an individual may die from AIDS and that contraction of HIV creates a substantial risk of developing AIDS. The contraction of HIV creates a substantial risk of death; therefore, it constitutes serious bodily injury.

¶ 23 Accordingly, we conclude that Appellee's conduct may have placed J.C. in

danger of serious bodily injury because this conduct may have placed J.C. in danger of contracting HIV. Therefore, the trial court erred in not taking judicial notice of this fact and instead requiring the Commonwealth to establish the likelihood of transmission of HIV.

¶ 24 Finally, the trial court concluded that the Commonwealth had failed to establish that even if Appellee knew that he was HIV-positive, there was no evidence that showed that Appellee "knew or should have known that oral sex created a risk that his HIV infection could be transmitted." T.C.O., 1/17/06, at 7. Essentially, the court determined that the Commonwealth had failed to show that Appellee acted in a reckless manner.

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). We conclude that the Commonwealth has presented sufficient evidence to establish for its *prima facie* case that Appellee's decision to have oral sex with J.C. without informing him that Appellee was HIV-positive constituted a "gross deviation from the standard of conduct that a reasonable person would observe." *Id.* Indeed, we find this deter-

HIV through oral sex and whether such acts may be prosecuted under Arkansas' HIV specific statute) (citing David Lyman et al., *Mini-*

*mal Risk of AIDS–Associated Retrovirus Infections by Oral–Genital Contact,* 255 JAMA 1703 (1986)).

mination to be at the crux of this case. As a matter of law we find the evidence to be sufficient to submit the question to the jury, though ultimately as a matter of fact, it will be for the jury to decide.

¶ 25 Order reversed.