J-S45020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERNEST ORTIZ | |
| Appellant | No. 1303 EDA 2013 |

Appeal from the Judgment of Sentence of April 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007591-2012

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED SEPTEMBER 04, 2014**

Ernest Ortiz appeals his April 18, 2013 judgment of sentence, which was entered following his non-jury conviction of simple assault and recklessly endangering another person ("REAP").[1,2]  Before us, Ortiz challenges the sufficiency of the evidence to sustain his REAP conviction. We affirm.

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as verdict-winner, supports the following account of the

---

[*]    Former Justice specially assigned to the Superior Court.

[1]    18 Pa.C.S. §§ 2701 and 2705, respectively.

[2]    Ortiz was acquitted of aggravated assault, possession of an instrument of crime, prohibited offensive weapons, terroristic threats, and intimidation of a victim.  **See** 18 Pa.C.S. §§ 2702, 907, 908, 2706, and 4952.

factual history of this case. On June 10, 2012, Ortiz approached the victim, Irving Flores Alejo, while Alejo was sitting on the steps of his house with his girlfriend and another friend. Alejo recognized Ortiz as the person who had allegedly mugged him two weeks prior to this incident. Accordingly, Alejo asked Ortiz not to speak to him. However, Ortiz continued to speak to him. Again, Alejo asked Ortiz not to speak to him and threatened to call the police. Alejo testified that Ortiz responded by saying, "shut up, otherwise [Ortiz] was going to hit" Alejo. Notes of Testimony ("N.T."), 3/5/2013, at 24. Immediately after this exchange, Ortiz left. Shortly thereafter, while Alejo was speaking to his girlfriend and another friend, Ortiz returned and struck Alejo, unexpectedly, in the side of the head. Alejo testified that Ortiz ran away immediately after striking him. Alejo received five stitches to repair the wound on his face.

While on duty that same day, Officer Dennis Zungolo received a flash around 6:40 p.m., which indicated that an offender who had committed an assault lived at 1905 South 5th Street. Officer Zungolo responded to the flash, and, at approximately 7:10 p.m., came upon Ortiz and stopped him for an investigation. Officer Zungolo ultimately arrested Ortiz and transported him to Methodist Hospital, where Alejo positively identified Ortiz as the man who had assaulted him that day.

The learned trial court summarized the procedural history of this case as follows:

A [stipulated] non-jury trial was held on March 5, 2013 after [the trial court] accepted [Ortiz'] written and oral colloquies waiving his right to a jury trial. [Ortiz] is illiterate and cannot read or write English.[3] He did, however[,] state that his attorney did explain the terms of the written colloquy to him and that he signed it after the explanation. Despite his illiteracy, [Ortiz'] waiver was determined to be knowing, voluntary, and intelligent upon [the trial court's] conclusion of the oral colloquy. [Ortiz], through counsel, then waived arraignment and entered a plea of not guilty on all charges.

After hearing the testimony of the victim, Irving Flores Alejo, and Police Officer Dennis Zungolo for the Commonwealth, and Ernesto Ortiz, [Ortiz'] father, for the defense, [Ortiz] was found guilty [of simple assault and REAP.]

On April 18, 2013, [Ortiz] was sentenced by [the trial court] to incarceration of one to two years, to be followed by two years [of] reporting probation. He was also ordered to complete drug and alcohol rehabilitation, anger management classes[,] and undergo a mental health evaluation. His probation is to be monitored through the Mental Health Unit, given his history of mental illness.

Trial Court Opinion ("T.C.O."), 10/28/2013, at 1-2.

On May 1, 2013, Ortiz filed a timely notice of appeal. The trial court ordered Ortiz to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Ortiz timely complied. On October 28, 2013, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Ortiz presents the following issue for our review: "Was not the evidence insufficient to convict [Ortiz] of recklessly endangering another

_____

[3] Although he cannot read or write English, Ortiz can speak and understand English. *See* N.T. at 5-15. However, both Ortiz's father (who testified for the defense) and the victim, Alejo, made use of a Spanish translator while testifying. *Id.* at 19, 64. Ortiz did not testify at trial.

person, 18 Pa.C.S. § 2705, as [Ortiz's] single punch to the complainant's head did not place the complainant in danger of death or serious bodily injury?" Ortiz's Brief at 8. Ortiz does not argue that there was insufficient evidence to establish that he struck the victim in the head. Nor does Ortiz claim that he acted in self-defense, or that he lacked the necessary *mens rea*. Rather, Ortiz's argument focuses upon the Commonwealth's alleged failure to prove that Alejo was in danger of death or serious bodily injury.

Our standard of review in this context is well-established:

> [O]ur applicable standard of review is "whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, was sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1130 (Pa. 2007). Additionally, when examining sufficiency issues, "we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility." ***Commonwealth v. Markman***, 916 A.2d 586, 598 (Pa. 2007).

***Commonwealth v. Crabill***, 926 A.2d 488, 490-91 (Pa. Super. 2007) (citations modified). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Brunson***, 938 A.2d 1057, 1058 (Pa. Super. 2007) (quoting ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1176 (Pa. Super.

1994)). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" *Id.* (quoting **Commonwealth v. Badman**, 580 A.2d 1367, 1372 (Pa. Super. 1990)).

REAP is defined as "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "[T]o sustain a conviction under Section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." **Commonwealth v. Cordoba**, 902 A.2d 1280, 1288 (Pa. Super. 2006) (citing **Commonwealth v. Hopkins**, 747 A.2d 910, 915-16 (Pa. Super. 2000)). "[T]he mere fact that the victim only sustained minor injuries and did not sustain 'serious bodily injury' does not[,] *ipso facto*[,] establish that appellant's actions did not place others in danger of such injury [pursuant to a REAP charge]." **Commonwealth v. Lawton**, 414 A.2d 658, 663 (Pa. Super. 1979).

In the present case, Ortiz argues that a single blow to the head, which resulted in a wound requiring five stitches, did not place Alejo in danger of suffering the "serious bodily injury" required by statute:

> The Commonwealth failed to prove beyond a reasonable doubt that this single punch created a known and foreseeable risk that [Alejo] would die or suffer permanent disfigurement. *A fortiori*, [Ortiz] cannot be said to have consciously disregarded such a risk.
>
> *       *       *
>
> By contrast, this Court has upheld convictions for reckless endangerment where the danger of death or serious bodily injury resulting from the defendant's conduct was highly foreseeable, if not immediately evident.

Ortiz's Brief at 9. In its Rule 1925(a) opinion, the trial court acknowledged that the injury Alejo ultimately sustained was "apparently minor," but observed that this did "not negate the fact that [Ortiz] placed the victim in danger of serious bodily injury" inasmuch as "the outcome could have been devastating." T.C.O. at 9.

By way of illustrative contrast, Ortiz offers citations to **Commonwealth v. Brunson**, 938 A.2d 1057, 1061 (Pa. Super. 2007) (upholding REAP conviction where defendant repeatedly punched, and threatened to kill, victim, and the victim suffered "torn ligaments in his right shoulder"), **Commonwealth v. Cottam**, 616 A.2d 988, 1004 (Pa. Super. 1992) (upholding REAP conviction where defendants failed to feed their children for "approximately six weeks," which resulted in one child dying), and **Commonwealth v. Rochon**, 581 A.2d 239, 244 (Pa. Super. 1990) (upholding REAP conviction where defendant beat her seventeen-month-old son with a belt and submerged him in cold water until the "victim became cyanotic and turned purple from cold"), in support of his argument. Ortiz's

Brief at 9. Ortiz asserts that, "[i]n each of these cases, the defendant's actions led to life-threatening consequences for the victims." *Id.* at 10 (hyphen added). In the absence of such "life-threatening consequences," Ortiz argues, his REAP conviction must be overturned. We disagree.

The cases cited by Ortiz represent instances of extreme conduct that fall under the definition of REAP. However, such cases do not cover the entire waterfront of situations in which an REAP conviction is valid. Instantly, Ortiz has focused his argument on the fact that Alejo did not actually suffer "serious bodily injury" as a result of Ortiz's assault. However, as our recitation of case law above indicates, the quality of injury actually sustained by a victim is not determinative in this context. **See Lawton**, *supra*. Rather, it is the assailant's potential, or "actual present ability," to inflict serious bodily injury, that controls. **See Cordoba**, *supra*. The fact that Alejo did not ultimately "suffer serious bodily injury" is not dispositive.

Our review of Pennsylvania case law has uncovered no cases that are directly analogous to the present one. However, in **Lawton**, a panel of this Court determined that an unarmed man committed REAP when he threatened several people in a crowded Philadelphia subway station, and then "started swinging [punches] indiscriminately into a crowd of students." **Lawton**, 414 A.2d at 662. The panel in **Lawton** discussed Section 2705, and sufficiency of the evidence, as follows:

> Reckless endangerment is defined in 18 Pa.C.S. § 2705 as "conduct which places or may place another person in danger of death or serious bodily injury." Section 2705 is derived from

[S]ection 211.2 of the Model Penal Code. The commentary to the Model Penal Code provides that [S]ection 211.2

> Establishes a general prohibition of recklessly engaging in conduct which places or may place another person in danger of death or serious bodily injury. It does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the zone of danger.

*Id.* Relying upon this standard, we concluded that "while appellant may have only struck the victim and another unidentified individual, his action of swinging indiscriminately into a crowd of students was sufficient to establish beyond a reasonable doubt that he may have placed other persons in danger of serious bodily injury." *Id.* While there is no allegation in the instant case that Ortiz placed anyone but the victim in immediate danger, we read *Lawton* for the general proposition that a victim of REAP, who is also an assault victim, need not actually sustain "serious bodily injury" in order for a defendant's underlying conviction to be upheld. Moreover, we note that the assailant in *Lawton* was found to have committed REAP on the basis of nothing more than swinging his fists, with no apparent target selected in advance. Here, by contrast, the trial evidence showed that Ortiz targeted Alejo.

With respect to the merits of Ortiz's sufficiency challenge, we begin by noting that the evidence presented by the Commonwealth suggests that Ortiz did not merely "punch" Alejo. At trial, Alejo testified that Ortiz struck him with a weapon: "When[] I looked over to see him, he hit me with

something." **See** N.T. at 21. Specifically, Alejo testified that immediately after Ortiz struck him in the face, he saw that Ortiz "had something metal on his hand" that was covering "the four fingers" of Ortiz's right hand. **Id.** at 22-23. Although Alejo could not identify precisely what Ortiz was holding in his hand, Alejo's testimony consistently emphasized that Ortiz had struck Alejo with something, as opposed to merely hitting him with his naked fist. This testimony, viewed in the light most favorable to the Commonwealth as verdict-winner, **see Crabill**, *supra*, was sufficient circumstantial evidence to allow the trial court to conclude that Ortiz used a weapon to assault Alejo. Moreover, Ortiz's assault was directed at Alejo's head, **see Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978) ("[T]here can be no dispute about the physiological significance of the head."), and caught Alejo unawares. Additionally, the injuries that Alejo sustained from Ortiz's assault demonstrate that Ortiz possessed an actual ability to inflict physical harm upon Alejo, and not merely a theoretical ability to do so.

Based upon the foregoing discussion, we conclude that there was sufficient evidence for the trial court to conclude that Ortiz committed REAP. Our case law demonstrates that a single blow to the head cannot be assumed to carry only a *de minimis* risk of serious bodily injury. **See Commonwealth v. Burton**, 2 A.3d 598, 605 (Pa. Super. 2010) (*en banc*) (upholding assailant's conviction for aggravated assault upon basis of a single punch, that placed "victim . . . in real danger of dying");

*Commonwealth v. Patrick*, 933 A.2d 1043, 1047-48 (Pa. Super. 2007) (holding that the Commonwealth presented a *prima facie* case for aggravated assault upon the basis of the assailant delivering a single punch to victim's head).[4]  Specifically, in both *Burton* and *Patrick*, the respective single blows to the victims' heads were "sucker punches," meaning that they were delivered without the victim's foreknowledge.  As a result, both of the victims in *Burton* and *Patrick* were felled and struck their heads upon the concrete, thereby greatly exacerbating their injuries.  *See Burton*, 2 A.3d at 604 (stating that "the victim was unprepared for the blow" and "fell headfirst to the pavement without the benefit of a reflexive action to protect against the fall"); *Patrick*, 933 A.2d at 1047 (same).

While *Burton* and *Patrick* do not specifically address the claim raised by Ortiz in this case, they are highly instructive in elucidating the potential harms that may result from single blows to the head.  Although Ortiz contends that his assault did not actually subject Alejo to "serious bodily

---

[4]  We cite to *Burton* and *Patrick* for the general proposition that a single blow to the head carries a real risk of serious bodily injury.  Both cases dealt explicitly with sufficiency of the evidence in the context of the crime of aggravated assault, an offense which is not at issue in the instant appeal.  However, the definition of what constitutes "serious bodily injury" for the purposes of both aggravated assault and REAP is identical.  *See* 18 Pa.C.S. § 2301 ("[T]he following words and phrases, when used in this article shall have, unless the context clearly indicates otherwise, the meanings given to them in this section.").  Thus, *Burton* and *Patrick* are germane to this discussion for the limited purpose of establishing that "serious bodily injury" may result from a single blow to the head.

- 10 -

injury," these cases indicate that Ortiz's conduct could have had that ultimate result. Here, viewed in the light most favorable to the Commonwealth, the evidence indicates that Ortiz struck Alejo with a weapon, while Alejo was unawares, and that this assault resulted in physical injury. Under Section 2705, we are not only concerned with the actual injuries inflicted as the result of an assault, but with the potential for harm it presented. **Lawton**, *supra*. Here, viewed in the context of our **Burton** and **Patrick** precedents, Ortiz ignored the palpable risk that Alejo would suffer "serious bodily injury" as the result of his actions. Thus, Ortiz's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/4/2014