J-S55004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL DONNELLY, | |
| Appellant | No. 1130 EDA 2013 |

Appeal from the Judgment of Sentence November 1, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003874-2012

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 16, 2014**

Daniel Donnelly appeals from the judgment of sentence of eleven and one-half to twenty-three months imprisonment followed by one year of probation that the trial court imposed after it convicted Appellant of theft, receiving stolen property, terroristic threats, and recklessly endangering another person ("REAP").  We reject Appellant's contention that the evidence was insufficient to support his conviction for receiving stolen property, but agree that it was insufficient to sustain the offense of REAP.  We therefore affirm in part and reverse in part and remand for re-sentencing.

Appellant's convictions rested on the testimony of the fifteen-year-old victim, N.S.  At approximately 8:30 p.m. on March 8, 2012, N.S. left a café on the 3700 block of Midvale Avenue, Philadelphia.  He encountered Appellant, Jimmy Gibbs, Eddie Gibbs, and Shawn Breck.  The victim knew

the four individuals, all of whom began to follow N.S. as he walked down Midvale Avenue. Eddie Gibbs grabbed the victim, and Appellant, who was twenty-eight years old, told the other three actors to "try to take whatever they could." N.T. Trial, 9/10/12, at 16. At that point, all four cohorts surrounded the victim. After Jimmy Gibbs punched N.S., he surrendered his cell phone and Ipod. As N.S., whose glasses broke as a result of the punch, began to walk away from the assault, Appellant approached him and said that if the victim mentioned his name, he would kill him. *Id*. at 25. When N.S. returned home, his mother telephoned police.

In this appeal from the judgment of sentence, Appellant raises two contentions:

> 1. Was the evidence insufficient to support the finding that Appellant received stolen property or theft where the evidence presented at trial established that Appellant never intentionally took, received, retained, or disposed of the property in question?

> 2. Was the evidence insufficient to support the finding that Appellant recklessly endangered another person where no evidence was presented at trial to establish that Appellant engaged in conduct that may have placed another individual in danger of death or serious bodily injury?

Appellant's brief at 2.

We first outline our well-established standard of review of sufficiency claims:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above

- 2 -

test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Slocum*, 86 A.3d 272, 275 (Pa.Super. 2014) (citation omitted).

Appellant first challenges his conviction for receiving stolen property. "Receiving stolen property is established by proving that the accused 'intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.' 18 Pa.C.S.A. § 3925(a)." *Commonwealth v. Newton*, 994 A.2d 1127 (Pa.Super. 2010). In assailing his conviction, Appellant notes that the victim never testified that Appellant took or was in possession of the property stolen from the young man. Indeed, N.S. indicated that Jimmy Gibbs and Shawn Breck stole his property.

The trial court stated that it convicted Appellant of the receiving-stolen-property offense based upon accomplice liability. "[I]t is well-established that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." **Commonwealth v. Lynn**, 83 A.3d 434, 454 (Pa.Super. 2013) (citation omitted). An accomplice is defined, in pertinent part, as a person who, "with the intent of promoting or facilitating the commission of the offense, . . . solicits [another] person to commit it" or who "aids . . . such other person in planning or committing" the crime. 18 Pa.C.S. § 306(c)(1)(i-ii). Thus, two elements must be present in order for a defendant to be convicted as an accomplice. "First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal." **Lynn**, **supra** at 454. The "defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene." **Id**. at 454-55.

In this case, the evidence was sufficient to establish that Appellant was an accomplice to the crime of receiving stolen property. He was more than merely present at the scene of the crime. Rather, he joined in the actions of the three other assailants and solicited the crime by telling his three cohorts to take anything that they could from the victim. He also aided the culprits

who actually took the cell phone and Ipod by surrounding the victim. His words established that he intended for the two principal actors to take items from the victim. Hence, we reject Appellant's first contention.

Appellant's next challenge is to the REAP offense. A person commits the crime of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. 18 Pa.C.S. § 2301 defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." "The *mens rea* for recklessly endangering another person is a conscious disregard of a **known risk** of death or great bodily harm to another person." ***Commonwealth v. Cordoba***, 902 A.2d 1280, 1288 (Pa.Super. 2006) (emphasis added and citation omitted).

As we noted in ***Commonwealth v. Klein***, 795 A.2d 424, 427-28 (Pa.Super. 2002) (citation omitted), to establish that a defendant committed the crime of REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." ***See also Commonwealth v. Fabian***, 60 A.3d 146 (Pa.Super. 2013).

Appellant relies upon ***Commonwealth v. Alexander***, 383 A.2d 887 (Pa. 1978). Although Appellant represents that Alexander was convicted of REAP when that defendant actually was convicted of aggravated assault, we

do find that decision instructive. Alexander's victim was standing on a sidewalk when Alexander punched him in the face. The victim fell to the ground but did not become unconscious, and the only injury that he sustained was a broken nose. At a nonjury trial, Alexander was convicted of aggravated assault under 18 Pa.C.S. § 2702(a)(1). Someone is guilty of that offense "if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). On appeal, our Supreme Court concluded that the Commonwealth failed to prove the offense in question.

The Commonwealth admitted that Alexander did not cause the victim serious bodily injury. It maintained that, when the defendant struck the victim on the nose with a closed first, the defendant displayed an intent to inflict such injury. The **Alexander** Court held that a single punch delivered to the face, without more, cannot support a finding that the actor intended to inflict serious bodily injury. It continued that, where a single punch is involved, the record must contain other evidence that the defendant had an actual intent to inflict such injury. It indicated that such intent could be supported by other circumstances, including, but not limited to, proof that the defendant was disproportionately larger or stronger than the victim, that the attack was not escalated solely due to restraint applied to the defendant,

that the defendant had a weapon, or that the defendant made comments during the incident that evidenced an intent to inflict serious bodily injury.

The defendant in **Alexander** was held not to possess specific intent to inflict serious bodily injury by punching the victim once. Likewise, herein, the evidence does not make out a case that Appellant exposed the victim to a **known risk** of serious bodily injury by telling his three companions to take his property. No one was armed and Appellant did not encourage or suggest that the victim be attacked. While there was a danger of bodily injury to N.S., there was not a known and actual risk of serious bodily injury inherent in the situation.

The result herein is supported by the decision in **Commonwealth v. Moody**, 441 A.2d 371 (Pa.Super. 1982). Therein, Moody was convicted of numerous offenses, including REAP. The Commonwealth's evidence established that the defendant forced a twelve-year-old girl into the basement of a building, where he fondled her. When Moody began to unzip his pants, the victim kicked him in the groin. Moody began to flee and the victim followed him. Moody struck the girl in an attempt to keep her in the basement and then tried to lock the basement door. After the girl told him not to lock the door, Moody ceased that action, and the victim left the premises. Moody argued on appeal that there was insufficient evidence to convict him of REAP, and we agreed. We held that none of Moody's actions, which included forcing the girl into the basement, striking her, and touching

her, placed the victim in "sufficient physical danger to support a conviction for recklessly endangering another person." ***Id***. at 374.

In this case, four people surrounded the victim and one of them punched him in the face. These actions involved substantially less danger than those examined in ***Moody***. Even though there were four accomplices involved in the crime and the victim was a teenager, we find no proof that Appellant exposed the victim to an actual and immediate danger of serious bodily injury. He encouraged his cohorts to take items from the victim but did not verbalize that he wanted the victim injured. One of his partners in crime, Jimmy Gibbs, delivered a single punch to the victim's face that broke his glasses but did not cause bodily injury. Under all the circumstances, we conclude that the evidence was insufficient to prove that Appellant consciously disregarded an actual and **known risk of death or great bodily harm**, which is the *mens rea* required to sustain a REAP offense. ***Cf. Commonwealth v. Lawton***, 414 A.2d 658 (Pa.Super. 1979) (defendant indiscriminately swung wildly at crowd, punched two people, and continually threated to kill people).[1]

_____

[1] We do observe that there is an apparent inconsistency in the case law regarding the immediacy of the danger required to sustain a REAP conviction. In ***Lawton***, we indicated that § 2705 did not mandate that any person actually be placed in danger but instead, also encompassed potential risks. Nevertheless, ***Moody*** is factually indistinguishable from the case at bar. Moreover, the more recent case law as indicated in the text above mandates that the situation create actual rather than apparent risk of danger. A potential risk of serious bodily injury appears to flow from a

(Footnote Continued Next Page)

Accordingly, we must reverse that conviction. Since our reversal in this respect affects the overall sentencing scheme of the trial court, which imposed the one-year probationary tail on this offense, we will remand for re-sentencing.

Appellant's conviction of recklessly endangering another person is reversed. In all other respects, the convictions are affirmed. The judgment of sentence is vacated and the matter is remanded for resentencing. Case remanded. Jurisdiction relinquished.

Judges Shogan and Ott Concur in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2014

_____
(Footnote Continued)

situation where four males, including one adult, surround a teenager to take his belongings.

- 9 -