J-S40020-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
MARC ANDREW WALKER   :
  :
Appellant   :   No. 15 WDA 2019

Appeal from the Judgment of Sentence Entered December 4, 2018
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000704-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:      FILED OCTOBER 11, 2019

Marc Andrew Walker appeals from the judgment of sentence imposed following his convictions for terroristic threats, recklessly endangering another person ("REAP"), and harassment.[1] Walker contends that the court erred in denying his request for a jury instruction on self-defense, and that the Commonwealth presented insufficient evidence to support his conviction for REAP. We affirm.

At trial, Walker's wife, Elizabeth Walker, testified that she and Walker were engaged in an argument on the first floor of their home, when Walker "pushed and struck" her shoulder. Trial Court Opinion, filed 4/30/19, at 2. "The argument progressed upstairs into the master bedroom where [Walker]

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2705, and 2709(a)(1), respectively.

went to a nightstand, withdrew a handgun, inserted a magazine containing bullets into the handgun, and then approached his wife who was backing out of the bedroom into the hallway." Id. Mrs. Walker testified that, "[w]ith the handgun in his right hand, [Walker] grabbed his wife's throat with his left hand and asked her if she wanted to die. Mrs. Walker twisted sideways, broke free from [Walker's] grasp, gathered together their children and fled the residence." Id.

The Commonwealth also presented the testimony of Walker's mother and Police Officer Christopher Hughes. Walker's mother testified about conversations she had with Walker and Mrs. Walker, and said that following the incident, she retrieved Walker's handgun and a few other guns from Walker's home and gave them to the police.

Officer Hughes testified that after Walker's wife called the police, he went to the Walkers' residence and arrested Walker. He said he later received the handgun from Walker's mother, along with a magazine, live ammunition, and three long guns. Officer Hughes could not recall whether the handgun was loaded when Walker's mother gave it to him. N.T., 9/12/18, at 51. He also stated that in order to fire the gun, the shooter would have to insert the magazine and pull the slide back and then slide it forward. Id. at 56. When asked whether the firearm had a "safety," Officer Hughes responded, "I know it has a hammer on it, so I'm not sure if it's a double action or a single action." Id. at 55-56.

Walker testified in his own defense and said that his wife initiated the argument while they were downstairs, and he brushed past her as he went upstairs. Id. at 63-65. Walker said his wife followed him upstairs, still yelling, and he admitted that he then retrieved the gun from the nightstand. Id. at 65, 76-77. According to Walker, the gun was not loaded and he did not point it at her. Id. at 65-66. He stated that he got the gun because he felt threatened. Id. at 65-66, 69, 74. However, Walker said he did not believe he needed the gun "to save [his] life," but did not want "to wait for somebody to be injured." Id. at 73. Walker conceded that his wife had not physically attacked him and was unarmed. Id. He also acknowledged that he was between 5'9" and 5'10" tall, and weighed 230 pounds, while his wife was 5'8" and around 159 pounds. Id. at 72. Walker testified that once his wife saw the gun, she stopped yelling at him, and Walker began to prepare their children for a bath. Id. at 66. He claimed that Mrs. Walker soon resumed yelling, and that he went into the bedroom and fell asleep. Id. at 67-68. He said he later awoke to find the house empty. Id. at 68.

Walker asked the court to instruct the jury on self-defense. Id. at 79. The court refused, stating, "[T]here has to be force exerted and the self defense or self protection is using other force sufficient to overcome the initial force exerted against the Defendant. There was no testimony as to any force being exerted against [Walker]; therefore, I am denying the charge." Id.

During closing argument, the Commonwealth argued,

The Judge will instruct you that a gun is a deadly weapon. Use your common sense. You are not permitted under the law to use a deadly weapon and deadly force on someone who hasn't even struck you. There's zero testimony that she ever struck him, zero testimony that she ever had a weapon.

Id. at 97.

Walker renewed his request for a self-defense instruction, arguing that the Commonwealth had raised the law of self-defense in its argument. Id. at 98. The court again denied the request. The court stated that it had already instructed the jury to follow the law as stated by the court, not by counsel, and would do so again in its closing charge, which it did. Id. at 99-100.

The jury found Walker guilty of terroristic threats and REAP. The court then, sitting without a jury but based on the evidence presented during the jury trial, convicted Walker of the summary offense of harassment. The court sentenced Walker for the terroristic threats and REAP convictions to two concurrent 12-month periods of probation, and for the harassment charge, it imposed a concurrent 90-day sentence of probation.[2]

Walker raises the following issues:

I. Whether the Court erred in failing to instruct the jury that [Walker] had the right to self-defense to negate the intent to terrorize?

_____

[2] Although Walker was initially sentenced on November 28, 2018, the court entered an amended sentencing order on December 4, 2018, to include the sentence for the harassment charge. We have amended the caption accordingly.

II. Whether the Commonwealth presented sufficient evidence to sustain a conviction for Recklessly Endangering Another [Person]?

Walker's Br. at 7.

### I. Self-Defense Instruction

Walker argues the court erred and abused its discretion in denying his request for a self-defense instruction. He contends that there was evidence that he reasonably believed he was in immediate danger because he testified that Mrs. Walker followed him upstairs during their argument and continued to attack him verbally to the point where he felt threatened. Walker's Br. at 18. Walker also points to his testimony that he got the gun because he did not want to "wait for someone to be injured." Id. at 19. Walker argues that the trial court erred by requiring evidence that Mrs. Walker either used unlawful force against him or threatened him with unlawful force, before it would give a self-defense instruction. Rather, Walker asserts, whether Mrs. Walker used or threatened physical force goes to the reasonableness of Walker's belief that he was in imminent danger, which he claims was for the jury.

Walker argues that the court compounded the error by allowing the Commonwealth to state during its closing argument that the law does not allow for use of deadly force against someone who "hasn't even struck you," because: (1) this is a misstatement of law, and (2) the court still refused to give the self-defense instruction after the Commonwealth had placed the issue squarely before the jury. Id. at 20. Walker further argues that the court's

closing charge — that the jury was to disregard counsel's statements of law — was insufficient to alleviate the jury's confusion.

"We review jury instructions for a clear abuse of discretion or an error of law." Commonwealth v. Hall, 199 A.3d 954, 963 (Pa.Super. 2018). "A jury charge is erroneous only if the charge as a whole is inadequate, not clear, or has a tendency to mislead or confuse a material issue." Id. We do not grant relief on a challenge to jury instructions where the error was harmless and did not contribute to the verdict. Commonwealth v. Bullock, 913 A.2d 207, 218 (Pa. 2006).

A claim of self-defense requires evidence of three things:

(a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat.

Commonwealth v. Mouzon, 53 A.3d 738, 740 (Pa. 2012) (brackets omitted).

For self-defense to be properly in issue, "there must be some evidence, from whatever source, to justify" a finding that the defendant acted in self-defense. Id. (quoting Commonwealth v. Black, 376 A.2d 627, 630 (Pa. 1977)). Thus, there must be evidence that, among other things, the defendant actually and reasonably believed deadly force was necessary to prevent death or serious bodily injury. Commonwealth v. Smith, 97 A.3d 782, 787 (Pa.Super. 2014) (citing Mouzon, 53 A.3d at 752). The reasonableness

inquiry involves a consideration of numerous factors, "including whether [the] complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident." Id. at 788. A defendant does not qualify for a claim of self-defense if the defendant used excessive force in response to non-deadly force. 18 Pa.C.S.A. § 505(b)(2); Commonwealth v. Jones, 332 A.2d 464, 466 (Pa.Super. 1974); see also Smith, 97 A.3d at 788.

Here, although the trial court's statement that Walker's claim of self-defense required evidence that Mrs. Walker had exerted actual force against Walker was not accurate, we nonetheless affirm because the evidence here did not put self-defense in issue. The evidence did not justify a finding that Walker reasonably believed that he needed to brandish a firearm to protect himself from imminent death or serious bodily injury. Not only had Mrs. Walker not used violence against him, she had not threatened to do so, did not have a weapon, and was considerably smaller than Walker. Moreover, even if Walker's belief that his wife intended to use physical force against him was objectively reasonable, Walker's response of brandishing a loaded firearm was excessive in response to any threat Mrs. Walker allegedly posed.

For like reasons, the Commonwealth's statement during closing does not require reversal. The court instructed the jury to disregard counsel's explanations of the law, and in any event, the statement did not mislead or

- 7 -

confuse the jury to such an extent as to prejudice Walker and require a new trial. The trial court did not err in refusing to instruct the jury on self-defense.

## II. Sufficiency of Evidence of REAP

Walker argues the Commonwealth failed to present sufficient evidence to convict him of REAP because there was no evidence that he pointed a firearm at his wife or that the firearm was ready to be fired. Walker argues that although Mrs. Walker testified that she saw Walker load a magazine into the gun, she did not say that the slide was forward, which Officer Hughes testified would be required to fire the gun. Walker also argues there was no testimony that the safety was off. Walker argues that the court erred in relying on Commonwealth v. Mitchell, 554 A.2d 542 (Pa.Super. 1989), because in that case, the defendant had struggled with the victim over a gun and there was a "very strong possibility the revolver could discharge." Walker's Br. at 23 (quoting Mitchell, 554 A.2d at 549). Here, according to Walker, there was no evidence of a struggle over the firearm or that the firearm was ready to be discharged.

"To determine the legal sufficiency of evidence supporting a jury's verdict of guilty, this Court must view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor." Commonwealth v. Hoffman, 198 A.3d 1112, 1118 (Pa.Super. 2018) (quoting Commonwealth v. Feathers, 660 A.2d 90, 95 (Pa.Super. 1995)). "We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged

has been established beyond a reasonable doubt." Id. (quoting Feathers, 660 A.2d at 95). "[T]he question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Commonwealth v. Hopkins, 747 A.2d 910, 913-14 (Pa.Super. 2000).

A conviction for REAP requires evidence that the defendant "recklessly engage[d] in conduct which place[d] or may [have] place[d] another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. A conviction for REAP requires a finding that the defendant had "an actual present ability to inflict harm and not merely the apparent ability to do so." Commonwealth v. Cordoba, 902 A.2d 1280, 1288 (Pa.Super. 2006). Accordingly, "the mere pointing of an unloaded gun, without more, does not constitute REAP." Commonwealth v. Reynolds, 835 A.2d 720, 728 (Pa.Super. 2003).

Here, the evidence was sufficient to establish that Walker had the present ability to harm Mrs. Walker because she testified that the gun was loaded. Walker has not cited any authority requiring evidence that the slide was forward or that the safety was off in order for the prosecution to prove REAP, and we are aware of none. Moreover, unlike the loading of the gun, moving the slide and turning the safety off are simple actions that a defendant can accomplish quickly, or that could occur during such a struggle as occurred here. Thus, the absence of such evidence does not defeat a finding that Walker had the present ability to inflict harm.

In addition, a conviction for REAP based on a defendant's possession of a firearm does not require evidence that the defendant pointed the firearm at the victim. Rather, "[b]randishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death." Hopkins, 747 A.2d at 916.

Walker's attempt at distinguishing Mitchell is thus unavailing. There, the defendant struggled with an arresting police officer, unsnapped the officer's gun holster, and attempted to remove the gun from the holster. 554 A.2d at 549. The defendant was "swinging wildly" and attempting to the throw the officer to the ground. Id. We affirmed the adjudication of delinquency for REAP, as "[t]here was a very strong possibility that the revolver could discharge" and the defendant therefore "possessed the actual present ability to inflict harm by struggling over an officer's gun." Id. We reached this conclusion without any mention of whether there was evidence that the safety was off or the slide was forward.

Here, Walker took a handgun, grabbed his wife by the throat and threatened her with death, and she struggled to break free. As the trial court explained, "[d]uring this time that . . . Mrs. Walker had to use some degree of force to overcome [Walker's] grasping . . . her throat, there is a good possibility that the gun could have discharged and injured Mrs. Walker." Tr. Ct. Op. at 6-7. We agree that the evidence that Walker struggled with his wife

- 10 -

while holding a loaded firearm and threatening her with death sufficiently indicated his ability to inflict death or serious bodily injury to support the conviction for REAP.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/11/2019