2025 PA Super 172

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTTY LEE CRAVENER | : | |
| | : | |
| Appellant | : | No. 899 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 30, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000388-2022

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.:                    **FILED: AUGUST 8, 2025**

Appellant, Scotty Lee Cravener, appeals the judgment of sentence imposed by the Court of Common Pleas of Armstrong County after a jury and the trial court jointly found him guilty of four counts of driving under the influence ("DUI") of a controlled substance as a third offense[1] and single counts of knowing or intentional possession of a controlled substance, possession of drug paraphernalia, driving while blood alcohol content ("BAC") is .02% or greater while license is suspended, and driving while license is suspended.[2]  He requests that we remand for reconsideration of his post-sentence challenge to the weight of the evidence in light of our Supreme

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(1)(i), (d)(1)(ii), (d)(1)(iii), (d)(2).

[2] 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(32), 75 Pa.C.S. § 1543(b)(1.1)(i), and 75 Pa.C.S. § 1543(b)(1)(i), respectively.

Court's decision in **Bold v. PennDOT**, 320 A.3d 1185, 1191 (Pa. 2024), arguing that his DUI prosecution should have been dismissed as *de minimis*.[3] We affirm.

The trial court has aptly summarized the facts underlying Appellant's convictions as follows:

> On September 23, 2021[,] at approximately 9:45 p.m., Corporal Sherry Hogue of the Pennsylvania State Police came upon [Appellant's] truck parked in the middle of the parking lot of an AutoZone store, which was closed at the time. As she drove past the AutoZone [store], she noticed that the male in the truck had his head down. She made a U-turn to confirm what she had seen, and … to check that the male was okay and that nothing suspicious was going on. She pulled up next to the passenger side of the truck, at which point [Appellant] looked up at her and rolled his passenger window down; she noticed that the truck was running, the driver's side door was open, causing a loud beeping [noise], and the keys were in the ignition. Corporal Hogue then asked [Appellant] what he was doing; he explained he was having a bad day, and that he did not have a driver's license. He told Corporal Hogue that he left his girlfriend's house earlier in the evening, and that he was contemplating going to Walmart to handle a situation with her. Corporal Hogue noticed that [Appellant's] eyes were bloodshot, watery, and appeared droopy. Corporal Hogue verified that [Appellant] did not have a driver's license, and she asked him to exit his truck.
>
> When she conducted a pat-down search, Corporal Hogue found a THC vape pen and a straw with white powder residue; a Suboxone strip was found in his wallet. [Appellant] admitted to having snorted Suboxone less than an hour prior. Corporal Hogue then conducted Standard Field Sobriety Tests (["]SFSTs["]), which led

---

[3] In the interest of brevity and clarity, we will use the conventional abbreviation "PennDOT" for the case captions that refer to the Pennsylvania Department of Transportation's Bureau of Driver Licensing, consistent with the Supreme Court's use of that abbreviation in **Bold**. **See Bold**, 320 A.3d at 1187 n.3.

her to conclude that [Appellant] was impaired. She also noticed that [Appellant's] legs were shaking, another factor in assessing impairment.

As a result of her observations, Corporal Hogue asked [Appellant] to submit to a legal blood draw. [Appellant] consented. Tests of [Appellant's] blood confirmed the presence of Schedule I and III controlled substances, and their metabolites.

Trial Court Opinion, 1/6/25, 1-3.

On February 2, 2023, Appellant entered a stipulated guilty plea to DUI of a controlled substance as a third offense (75 Pa.C.S. § 3802(d)(2)) and driving while BAC is .02% or greater while license is suspended (75 Pa.C.S. § 1543(b)(1.1)(i)), in exchange for a recommended sentence of twenty-one to sixty months' imprisonment. **See** Plea Agreement, 11/1/22, 1. With the Commonwealth's consent, the trial court granted Appellant's oral motion to withdraw that plea on April 20, 2023. **See** Order (plea withdrawal), 4/20/23, 1; N.T. Plea Withdrawal Hearing, 4/20/23, 3-4.

On July 14, 2023, Appellant elected to be tried by a jury, who found him guilty of the above-referenced four counts of DUI of a controlled substance as a third offense and single counts of possession of a controlled substance and possession of drug paraphernalia. **See** Verdict Sheet, 7/14/23, 1-2. On the same day, the trial court found him guilty of driving while BAC is .02% or greater while license is suspended and driving while license is suspended. **See** Order (summary offenses verdict), 7/14/23, 1.

On January 30, 2024, the trial court sentenced Appellant to twenty-one to sixty months' imprisonment with credit for time served, estimated to be

twenty-five days.[4]  *See* Order (sentencing for "DUI Count – 1"), 1/30/24, 1-3; N.T. Sentencing Hearing, 1/30/24, 7.  The court imposed a sentence for Appellant's first count of DUI of a controlled substance (75 Pa.C.S. § 3802(d)(2)); the remaining DUI counts merged for sentencing purposes.  *See* Order (sentencing for "DUI Count – 1"), 1/30/24, 1-3; N.T. Sentencing Hearing, 1/30/24, 7-9.  No further penalty was imposed for possession of a controlled substance and possession of drug paraphernalia.  Also, the court imposed a $1,000.00 fine for driving while BAC is 02% or greater while license is suspended; the remaining summary count of driving while license is suspended merged for sentencing purposes.  *See* Order (sentencing for "Possession of Controlled Substance Count – 5"), 1/30/24, 1-3; Order (sentencing for "Count 6 [-] Possession of Drug Paraphernalia"), 1/30/24, 1; Order (sentencing for "Count 7"), 1/30/23, 1; N.T. Sentencing Hearing, 1/30/24, 8-9.

_____

[4] Appellant failed to appear for a sentencing hearing originally scheduled for September 20, 2023, and the trial court issued a bench warrant.  *See* Notice of Sentencing, 8/23/23, 1; Petition for Bench Warrant, 9/20/23, 1; Bench Warrant, 9/20/23, 1.  After it was discovered that Appellant was absent from the court because he was receiving inpatient treatment for drug and alcohol abuse, the court lifted the bench warrant with the Commonwealth's consent.  *See* Petition to Vacate Warrant, 9/26/23, ¶¶ 3-4; Commonwealth's Motion to Vacate Bench Warrant, 9/26/23, 1; Order (bench warrant vacation), 9/27/23, 1.

With leave of court for an extension of time to file a post-sentence motion, Appellant filed that motion on March 5, 2024.[5]  **See** Petition for Extension of Post-Sentence Motion Deadline, 2/7/24, 1-3; Order (post-sentence motion deadline extension grant), 2/8/24, 1; Post-Sentence Motion, 3/5/24, 1-4.  Relevant to his claim on appeal, Appellant raised the following challenge to the weight of the evidence in his post-sentence motion:

3.    According to the evidence presented at trial, [Appellant] was not observed moving the motor vehicle.

4.    The evidence offered did not demonstrate that [Appellant] was incapable of safe driving.

5.    The primary witness offered inconsistent testimony.

6.    The legal standard for driving under the influence of controlled substances that are lawful with valid prescriptions is not the *per se* standard used for substances that are unlawful for any purpose.

Post-Sentence Motion, 3/5/24, ¶¶ 3-6.  The trial court scheduled a hearing for the motion to be held on May 15, 2024, and Appellant later sought, and was granted, a continuance of that hearing and a thirty-day extension of the time-period for deciding the post-sentence motion pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(3)(b).  **See** Preliminary Order (post-sentence motion hearing), 3/5/24, 1; Motion for Continuance, 5/10/24, 1 Motion for

_____

[5] The post-sentence motion was filed by newly appointed counsel after Appellant informed his counsel at the Office of the Public Defender of Armstrong County that he wanted to assert that the Office provided ineffective assistance.  **See** Application for Appointment of Private Counsel, 2/16/24, ¶¶ 5-8; Order (appointment of counsel), 2/20/24, 1.

Extension of Time, 5/10/24, 1-2; Order (continuance), 5/13/24, 1; Order (extension of time), 5/13/24, 1. On July 19, 2024, the trial court denied Appellant's post-sentence motion. **See** Order (post-sentence motion denial), 7/19/24, 1. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). **See** Notice of Appeal, 7/29/24, 1; Order (Pa.R.A.P. 1925(b) statement), 8/5/24, 1; Rule 1925(b) Statement, 8/26/24, 1-2.

Appellant presents the following question for our review: "Can the 18 [Pa.C.S.] § 312 *de minimis* provisions be used to support a challenge to the weight of the evidence?" Appellant's Brief, 7.

Appellant asserts that he "should [have been] able to challenge the weight of the evidence against him by raising a *de minimis* argument" pursuant to 18 Pa.C.S. § 312.[6] Appellant's Brief, 12. Though he did not raise a claim under Section 312 in his post-sentence motion, he suggests that "a post-trial *de minimis* argument should be treated as a challenge to the weight of the evidence." *Id.* at 13. He then cites our Supreme Court's recent decision in **Bold** – an opinion issued while this case has been pending on direct review – for the conclusion that the purpose of DUI statutes is to "deter, detect, and punish intoxicated *driving*." Appellant's Brief, 13, citing **Bold**, 302 A.3d at

---

[6] Appellant preserved this claim in his Rule 1925(b) statement and the trial court addressed it in its opinion. **See** Rule 1925(b) Statement, 8/26/24, 1; Trial Court Opinion, 1/6/25, 5-8.

1198 (emphasis in original). Based on that statement in **Bold**, he asserts that "[i]t is [his] position that arresting and convicting individuals who are parked and not actively driving goes against the purpose and public safety intent of Pennsylvania's impaired driving laws." Appellant's Brief, 15. He then asks us to remand this case "to permit the [trial] court to consider the weight of the evidence in light of the **Bold** decision." **Id.**

Appellant raised a challenge to the weight of the evidence in his post-sentence motion but never directly presented to the trial court any claim based on Section 312. Thus, his present challenge to his DUI conviction is premised on the trial court's failure to *sua sponte* consider the applicability of the *de minimis* infractions statute. That statute provides the following:

**§ 312. De minimis infractions**

**(a) General rule.--**The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

> (3) presents such other extenuations that it cannot be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

**(b) Written statement.--**The court shall not dismiss a prosecution under this section without filing a written statement of its reasons, except that if the attorney for the Commonwealth is the moving party for such dismissal no such written statement need be filed.

18 Pa.C.S. § 312.

Appellant alleges that his prosecution was inconsistent with the purposes of our DUI laws, based on his reading of our Supreme Court's decision in **Bold**. **See** Appellant's Brief, 13-15. We interpret his claim as a challenge under Section 312(a)(2). We have stated that the purpose of Section 312(a)(2) is "to remove petty infractions from the reach of the criminal law." **Commonwealth v. Moll**, 543 A.2d 1221, 1226 (Pa. Super. 1988); **see also Commonwealth v. Moses**, 504 A.2d 330, 332 (Pa. Super. 1986) ("We believe the legislature enacted 18 Pa.C.S. § 312 to apply to situations in which there was no harm done to the either the victim or society. Therefore, it is incumbent upon the trial court not to dismiss criminal conduct that is injurious to the victim or to society.").

It is clear from our case law that a trial court may *sua sponte* dismiss a prosecution pursuant to Section 312. For instance, we have noted:

> [N]either the statute nor case law requires a defendant to preserve the issue of *de minim*[*i*]*s* infractions by means of inclusion in an omnibus motion. On the contrary, the language of the statute requires the trial court to dismiss the prosecution on its own accord, upon a determination that the defendant's conduct involved *de minim*[*i*]*s* infractions.

**Commonwealth v. Gemelli**, 474 A.2d 294, 300 (Pa. Super. 1984). Upon reviewing claims challenging a trial court's refusal to dismiss charges under

- 8 -

Section 312, we have applied an abuse of discretion standard of review.[7] **_See_**

**_Commonwealth v. Toomer_**, 159 A.3d 956, 959 (Pa. Super. 2017);

**_Commonwealth v. Eliason_**, 509 A.2d 1296, 1299 (Pa. Super. 1986). "An

abuse of discretion is more than just an error in judgment and, on appeal, the

trial court will not be found to have abused its discretion unless the record

discloses that the judgment exercised was manifestly unreasonable, or the

result of partiality, prejudice, bias, or ill-will." **_Toomer_**, 159 A.3d at 959

(citation omitted).

Appellant's failure to at least object before the trial court on the basis of

Section 312 waives the instant claim for our purposes. **_See_** Pa.R.A.P. 302(a)

("Issues not raised in the trial court are waived and cannot be raised for the

first time on appeal."); **_see also Commonwealth v. Boyer_**, 891 A.2d 1265,

1267 (Pa. 2006) ("Prevailing jurisprudence … no longer recognizes the plain

error doctrine. In abolishing the plain error doctrine in Pennsylvania, the Court

determined that unpreserved claims, including constitutional ones … can be

more properly remedied by a claim of ineffective assistance of counsel.")

(internal citation and quotation marks omitted).

_____

[7] We have also applied an abuse of discretion standard of review to challenges to orders granting dismissal under Section 312. **_See, e.g._**, **_In re R.W._**, 855 A.2d 107, 109 (Pa. Super. 2004); **_Commonwealth v. Jackson_**, 510 A.2d 1389, 1391 (Pa. Super. 1986); **_see, e.g._**, **_Commonwealth v. Przybyla_**, 722 A.2d 183, 184 (Pa. Super. 1998) ("Given that the trial court had proper authority to both _sua sponte_ reject the guilty plea agreement and to dismiss the … charges as _de minimis_ infractions, we now consider the Commonwealth's assertion that the trial court's action in so doing constituted an abuse of discretion.") (some altered formatting).

The application of an abuse of discretion standard of review to Section 312 claims requires the trial court to **exercise** discretion in the first instance. Without such an exercise of discretion, review of the merits of the underlying claim is rendered impossible because there is no discretionary decision for this Court to review. **See, e.g.**, **Plum v. Tampax, Inc.**, 160 A.2d 549, 554 (Pa. 1960) (for appellate court to review for abuse of discretion, trial court must first "exercise" discretion).

Additionally, our exceptions to the general requirement of preservation as contained in Rule 302(a) are confined to issues presenting questions of law, such as challenges to the sufficiency of evidence sustaining a conviction or the legality of a sentence. **See Commonwealth v. Hill**, 238 A.3d 399, 407 (Pa. 2020) ("challenges to the legality of sentences are an exception to [Pa.R.A.P. 302(a)'s] general issue-preservation rule"); **Commonwealth v. McCurdy**, 943 A.2d 299, 301 (Pa. Super. 2008) (noting that sufficiency of evidence claim cannot be waived under Rule 302(a) because Pa.R.Crim.P. 606(A)(7) expressly provides that sufficiency challenge may be raised for first time on appeal). The evaluation of claims, under Section 312, on the other hand, require the trial court to engage in fact-finding regarding the defendant's conduct considering the totality of the circumstances—a task that is generally not properly suited for the appellate court to conduct in the first instance. **See** 18 Pa.C.S. § 312(a) ("The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, **it finds that** the conduct of the defendant"

satisfied at least one of three enumerated factual scenarios) (emphasis added). Given that the fact finding of the trial court is central to the evaluation of a claim under Section 312, the issue preservation requirement in Rule 302(a) would apply to appellate review of claims for *de minimis* dismissal.

Where the generally applicable waiver rule applies, a defendant must present a Section 312 claim to the trial court in the first instance. In ***Commonwealth v. Schnabel***, 344 A.2d 896, 898 n.3 (Pa. Super. 1975), we found waiver from Schnabel's failure to raise a *de minimis* dismissal claim before the trial court, and explicitly refrained from considering the applicability of Section 312 in the first instance. ***See id.*** ("we note that we would probably be inclined to regard [Schnabel's] conduct as 'too trivial to warrant the condemnation of a conviction,' under [Section 312]. However, since this issue was not presented to the [trial] court, we will not consider it on appeal.").

Additionally, references in our case law to "defenses" under the *de minimis* statute suggest that it is the defendant's affirmative obligation to raise the *de minimis* issue, even though Section 312 only refers to the trial court's obligation to dismiss in certain circumstances. ***See Commonwealth v. Williams***, 579 A.2d 869, 871 (Pa. 1990) (noting, after holding statute prohibiting smuggling of contraband into correctional institutions applied, even though visitor at issue had no intent to deliver contraband to confined persons, that "in an appropriate case the **defense of a *de minimis* infraction** might be asserted in effort to obtain dismissal of the criminal charge") (emphasis added; formatting altered); ***Commonwealth v.***

- 11 -

***Cordoba***, 902 A.2d 1280, 1286 n.1 (Pa. Super. 2006) ("[a]n HIV-positive defendant facing prosecution for violation of a criminal statute arising from the defendant exposing another to his or her bodily fluids may also have a **defense under the *de minimis* exception** where the likelihood of transmission is miniscule") (emphasis added).

However, in other cases, we have proceeded to evaluate the applicability of Section 312, even absent explicit indication the defendant first presented the claim to the trial court. ***See, e.g.***, ***Commonwealth v. Hartzell***, 988 A.2d 141, 145 (Pa. Super. 2009) (reviewing claim concerning whether reckless endangerment charges were *de minimis* under Section 312 without reference to whether claim presented to trial court); ***Commonwealth v. Matty***, 619 A.2d 1383, 1387-88 (Pa. Super. 1993) (*sua sponte* reviewing applicability of Section 312 and finding it inapplicable to Matty's conviction for theft of services even though Matty did not explicitly present appellate claim seeking dismissal under Section 312); ***Commonwealth v. Guthrie***, 616 A.2d 1019, 1020-21 (Pa. Super. 1992) (reviewing substantive claim challenging failure of trial court to dismiss case under Section 312 without reference to whether *de minimis* claim considered by trial court); ***see also Commonwealth v. Moll***, 543 A.2d 1221, 1226 (Pa. Super. 1988) (upon finding evidence insufficient for Moll's criminal mischief conviction, we opined in dicta that we would also be inclined toward reaching same result via dismissal as *de minimis* infraction pursuant to Section 312). Notably, in none of these cases was it clear, as it is

here, that the appellant failed to raise a claim of *de minimis* dismissal in the trial court.

In **Commonwealth v. Deible**, 300 A.3d 1025, 1033 (Pa. Super. 2023), we were presented with a challenge to a failure to dismiss an animal cruelty charge as *de minimis*, where the trial court and the Commonwealth maintained that the claim was waived because it had not been presented "before[] or during [Deible's] summary trial." **Id.** Deible maintained that she preserved her *de minimis* dismissal claim in a post-sentence motion and in her concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). **See Deible**, 300 A.3d at 1033. If there was no need for preservation of the claim at all below, regardless of the preservation requirement in Pa.R.A.P. 302(a), we would have resolved these conflicting arguments about waiver by stating as much. Instead, we cited **Gemelli**, **supra**, and noted only that Deible "was not required to preserve the issue prior to the hearing," referring to her hearing *de novo* before the court of common pleas, which court ultimately found her guilty of the charge at issue in that case. **Deible**, 300 A.3d at 1033. Our holding was that raising the claim in the trial court, even after trial, was sufficient. The need to preserve the claim for appellate review was never questioned.

Here, Appellant construes his Section 312 claim as being implicitly encompassed by his challenge to the weight of the evidence and requests that we remand for consideration by the trial court. **See** Appellant's Brief, 12. We need not take that course of action because we find the claim has been waived

as there is no authority that permits an exception to the issue preservation requirements of Rule 302(a) for appellate claims seeking dismissal under Section 312. Indeed, Appellant failed to specifically raise a Section 312 claim in his post-sentence motion that challenged the weight of the evidence, and a claim for dismissal under Section 312 would be separate and distinct from a challenge to the weight of the evidence.

To the extent that Appellant suggests his claim for dismissal is a challenge to the weight of the evidence, we have found no case law treating similar claims as weight claims. Appellant does not point us to any relevant precedent evaluating a *de minimis* dismissal claim under the standards applicable to a weight claim. We conclude that Appellant's suggestion that a claim under Section 312 should be treated as a challenge to the weight of the evidence is incorrect for two reasons.

First, Section 312 claims and weight challenges require entirely different evaluations by the trial court. A challenge to the weight of the evidence addresses the credibility of the evidence of the prosecution. ***See, e.g.***, ***Commonwealth v. Palo***, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("Directed entirely to the credibility of the Commonwealth's chief witness, [Palo's] claim challenges the weight, not the sufficiency, of the evidence."). A claim based on Section 312, on the other hand, does not require an evaluation of the credibility of witnesses or weight of the evidence presented. A Section 312 claim instead **concedes the weight and sufficiency of the evidence** and asks the trial court to consider whether the nature of the conduct proven

satisfies the circumstances requiring dismissal laid out in Section 312(a)(1)-(3).

Second, Section 312 claims and weight challenges do not seek the same relief. A Section 312 claim seeks outright dismissal of a prosecution by the trial court. **See** 18 Pa.C.S. § 312(a) ("The court shall dismiss a prosecution if…"). A weight challenge if granted would, instead, compel a new trial. **See Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000) ("a claim challenging the weight of the evidence if granted would permit a second trial").

Additionally, if we were to treat a claim for dismissal under Section 312 as a weight claim, it would be subject to issue preservation and waiver considerations under Pennsylvania Rule of Criminal Procedure 607. **See** Pa.R.Crim.P. 607(A)(1)-(3) (requiring weight claim be preserved in motion for new trial, orally, on record, at any time before sentencing, by written motion at any time before sentencing, or in post-sentence motion). Thus, if we agreed with Appellant's treatment of a Section 312 claim as a weight challenge it would clearly be waived for lack of preservation under Rule 607. **See also Commonwealth v. Jones**, 191 A.3d 830, 835 (Pa. Super. 2018) (new theories for weight challenge presented for first time on appeal are waived; "since [Jones] failed to raise his particular new weight theories before the trial court and the trial court did not, therefore, review the new theories and weigh the evidence according to it, there is no discretion for this Court to review").

Even assuming Appellant's Section 312 claim was reviewable insofar as it relates to the trial court's alleged failure to grant dismissal *sua sponte*, we

- 15 -

would find—to the extent we can review this claim under a theory that the trial court abused its discretion by failing to apply section 312 *sua sponte*—that it was not an abuse of discretion for the trial court to have declined to dismiss the DUI prosecution.

To that end—even if not waived—on the merits, Appellant asserts that, according to our Supreme Court's decision in **Bold**, the purpose of our Commonwealth's DUI statutes is to "deter, detect, and punish intoxicated *driving*." Appellant's Brief, 13, **citing Bold**, 320 A.3d at 1198. Appellant claims that, because he was not observed driving or moving a motor vehicle, and he was not observed in "an active traffic-way" by Corporal Hogue, "his [presence] in a parked vehicle away from traffic is precisely the behavior that our impaired driving statutes [are] designed to promote." Appellant's Brief, 14. Appellant thus suggests that his DUI prosecution should be dismissed under Section 312. **See id.** at 15 ("It is [Appellant's] position that arresting and convicting individuals who are parked and not actively driving goes against the purpose and public safety intent of the Pennsylvania's impaired driving laws, as identified in the **Bold** case.").

In **Bold**, a police officer found the driver at issue unconscious behind the wheel of a car parked legally in a mall parking lot near a bar with the car's engine running and its headlights on. **See Bold**, 320 A.2d at 1187. When roused by the officer, Bold appeared to be intoxicated, admitted to drinking at the nearby bar, and explained that he had intended to sleep in his car until he was fit to drive home safely and legally. **Id.** The responding police officer

- 16 -

arrested Bold for DUI and took him to a nearby medical facility where he refused to consent to a blood test. *Id.* Due to his refusal to consent to the blood test, PennDOT suspended his driver's license. *Id.*

Upon reviewing a decision from the Commonwealth Court finding that the police officer had reasonable grounds to believe that Bold was operating or in actual physical control of his vehicle's movement, our Supreme Court reversed. In doing so, it emphasized that "[t]he Vehicle Code's provisions pertaining to DUI aim to deter one hazardous behavior that imperils public safety and one only: *driving* under the influence." *Bold*, 320 A.3d at 1201 (emphasis in original).

Our Supreme Court was asked to resolve in *Bold*, *inter alia*, whether evidence of a vehicle's movement is required to prompt the application of our DUI statute at 75 Pa.C.S. § 3802 and our implied consent for chemical testing statute at 75 Pa.C.S. § 1547. To determine whether the driver in that case should have been subjected to chemical testing under Section 1547, the Court needed to confront whether the circumstances gave the responding officer "reasonable grounds to believe" that Bold was "operating or in actual physical control of the movement" of his vehicle at the time of, or before, his interaction with the officer. *See Bold*, 320 A.3d at 1188. Important to the outcome in that case, the responding officer testified that he did not believe that Bold had been driving while under the influence of an intoxicant. *Id.* at 1191; *see also id.* at 1188 ("Officer Gelnett admitted that there was no evidence that Bold had driven his car or otherwise moved his vehicle at all while intoxicated.").

- 17 -

In reaching its conclusion to reverse the Commonwealth Court's decision, the **Bold** Court adopted one of its prior holdings as follows:

> In determining whether an officer had reasonable grounds to believe that a motorist was in actual physical control of a vehicle, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running, and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police.

**Bold**, 320 A.3d at 1201 (quoting **Banner v. PennDOT**, 737 A.2d 1203, 1207 (Pa. 1999)).  It also cautioned that the above-quoted test must be applied in a fashion that "distinguish[es] circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated."  **Bold**, 320 A.3d at 1201 (quoting **Banner**, 737 A.2d at 1208).

Upon now seeking dismissal under Section 312 based on **Bold**, Appellant argues that his conduct fell within the category of a "motorist … physically present in a motor vehicle after becoming intoxicated" that **Bold** states was not the harm or evil sought to be prevented by our DUI statutes.  **See Bold**, 320 A.3d at 1196 ("[f]rom long-haul truckers at truck stops to users of recreational vehicles returning from a raucous campfire, it is foreseeable that would-be drivers who crawl into bed on a chilly night to fully sleep off their intoxication will idle their vehicles to power the air conditioning, the heat, or other amenities[,] … we do not punish individuals for the crimes they *might*

commit") (emphasis in original). Consistent with the analysis and holding in **_Bold_**, Appellant's present claim is dependent on whether the totality of the circumstances in the case indicated he had driven his vehicle while intoxicated at some point prior to the arrival of the police.

In favor of his argument, Appellant cites that "he was not observed driving or moving a motor vehicle," "[h]is vehicle was in the parking lot of a private business," and "he was not on an active traffic-way." Appellant's Brief, 14. At the same time, Appellant concedes that, unlike Bold, who informed the officer he was sleeping off his intoxication, he was not "sleeping… off" a state of intoxication at the time of his police interaction. **_Id._** ("Although Mr. Cravener was not 'sleeping it off'…").

In its Rule 1925 opinion, the trial court addresses the claim and reasons that Appellant's conduct did not constitute a _de minimis_ infraction under Section 312 because the evidence supported the notion that Appellant recently drove while intoxicated. **_See_** Trial Court Opinion, 1/6/25, 7 ("The conduct which posed the danger was [Appellant] having driven under the influence [prior to his discovery in the parking lot], not his conduct of sitting in his car in a parking lot."); **_id._** at 9 ("There is nothing petty about driving while under the influence."). The court further noted that:

> Corporal Hogue's observations (the truck's engine running with the keys in the ignition, drug paraphernalia in the truck, [] [Appellant's] poor performance on the [SFSTs], for instance), and [**Appellant's**] **statements that he had driven from his girlfriend's house earlier and that he had snorted Suboxone less than an hour prior**, led Corporal Hogue to conclude that

- 19 -

[Appellant] had recently driven while under the influence of drugs. It is that conduct which posed the danger, and is consistent with the purpose of DUI laws.

*Id.* at 7 (emphasis added).

We agree with the trial court that the responding officer had reasonable bases to believe that Appellant recently operated his vehicle while intoxicated, and that specific evidence supported a conviction for criminal conduct injurious to society, thereby rendering Section 312 *de minimis* principles inapplicable. *See Moses*, 504 A.2d at 332 ("We believe the legislature enacted 18 Pa.C.S. § 312 to apply to situations in which there was no harm done to either the victim or society. Therefore, **it is incumbent upon the trial court not to dismiss criminal conduct that is injurious** to the victim or **to society**.") (emphasis added). Indeed, when Corporal Hogue first observed Appellant's truck, it was in the parking lot of a closed auto parts store. *See* N.T. Trial, 7/14/23, 38. The truck was not in a designated parking spot and instead was just parked in the middle of the parking lot. *Id.* (Corporal Hogue: "Autozone was closed at that time, all of the lights were off. The truck was positioned right in the middle of the parking lot. *It wasn't in a parking slot or anything.* It was parked in the middle of the parking lot, as you will see on the [motor vehicle recording].") (emphasis added). The fact that Appellant's car was not positioned in a designated slot for parking in the lot suggested that Appellant was intoxicated at the time that he brought his car to a stop at that location. It did not imply that he parked the car with the appropriate capacity to operate the vehicle and then decided to use his intoxicating

controlled substances at that location. **See Commonwealth v. Williams**, 871 A.2d 254, 260 (Pa. Super. 2005) (evidence supporting DUI conviction included, *inter alia*, Williams sleeping in parked car with engine running with headlights on and "stereo blaring" while parked diagonally across two handicapped parking spaces). We conclude that where parking across two handicapped parking spaces was adequate evidence of impaired parking in **Williams**, Appellant's complete failure to park in a designated parking space in the AutoZone parking lot in this case supports an equal inference of impaired parking.

While the instant case does not feature an abundance of evidence reflecting the timeline of Appellant's actions leading up to his police encounter, the position of Appellant's truck running in the parking lot at the time of the police encounter, combined with his statements about his actions prior to the officer's arrival, supported the inference that Appellant engaged in intoxicated driving prior to Corporal Hogue's arrival. **See Williams**, 871 A.2d at 260 ("The totality of the circumstances, including the location and **position of the vehicle** and the running engine, supported an inference that [Williams] drove his vehicle while intoxicated to the parking lot of the Eat 'n Park [restaurant].") (emphasis added).

That Appellant's truck was found in a public parking lot by Corporal Hogue rather than on the side of a road does not change our conclusion that Appellant's conduct fell within the ambit of the DUI statute; this Court has held that such a public parking lot is a "trafficway" for purposes of the DUI

statute. *See Commonwealth v. Proctor*, 625 A.2d 1221, 1224 (Pa. Super. 1993) (because "the evidence established that [the] appellant drove in a parking lot of a mall that is open to the public for shopping[,] … there was sufficient evidence for the jury to conclude that the parking area was a trafficway"); 75 Pa.C.S. § 102 (defining trafficway, in relevant part, as any place any of part of which is "open to the public for purposes of vehicular travel as a matter of right or custom").

The absence of other persons in the parking lot at the time of the police encounter in this case also has no bearing on our disposition here. For instance, a plurality of our Supreme Court has observed:

> [N]owhere in the [DUI] statute is there a requirement that the fact-finder should consider whether or not one in actual physical control of a vehicle and under the influence of alcohol or controlled substances poses a threat to public safety. The legislature has reasonably determined that one driving a motor vehicle on the public streets and highways of the Commonwealth while under the influence of alcohol or controlled substances constitutes a threat to public safety *per se*, even if there are no other members of the public immediately endangered.

*Commonwealth v. Wolen*, 685 A.2d 1384, 1386 n.4 (Pa. 1996) (plurality). Under this approach, the criminalization of the conduct still suits public safety considerations as it seeks the protection of the impaired driver, from his or her own actions, even if that impaired driver does not cross paths with other members of the public. Although *Wolen*, as a plurality decision, is not binding on this Court, Justice Dougherty in his concurring opinion in *Bold* referred to the *Wolen* opinion as particularly instructive, quoted the above-reproduced

section of **Wolen**, and noted that the focus in that case was on "whether the motorist **already** endangered the public safety rather than whether the motorist **may** pose a **future** threat by being positioned such they could move the car at any time." **Bold**, 320 A.2d at 1205 (concurring opinion; Dougherty, J.) (emphasis in original). **Wolen** remains instructive for our purposes because, like in **Bold**, the court here could infer that Appellant posed a public safety risk by driving while impaired based on the position in which his truck was parked—amounting to a non-hypothetical threat.

As the totality of the circumstances supported the inference that Appellant drove while impaired from his use of controlled substances, we are unable to conclude that the trial court's failure to *sua sponte* dismiss his DUI prosecution as *de minimis* under Section 312 was an abuse of discretion.[8] **See Guthrie**, **supra**, 616 A.2d at 1021 (rejecting claim for dismissal under Section 312 with respect to driving while operating privileges are suspended (DUI related) conviction where Gutherie claimed he mistakenly crossed state lines into Pennsylvania, and noting, "The legislature's intent in enacting 75 Pa.C.S. § 1543(b), was to strictly enforce DUI suspensions, in direct response to a severe threat to public safety … this [C]ourt will not undermine our state's

---

[8] The trial court did not specially address the position of Appellant's truck in the "discussion section" in its Rule 1925(a) opinion, but noted, in its factual recitation, that the truck was "in the middle of the parking lot." Trial Court Opinion, 1/6/25, 1. Nevertheless, it "is well settled that where the result is correct, an appellate court may affirm a [trial] court's decision on any ground[.]" **Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (citation omitted).

policy against drunk driving by declaring appellant's acts '*de minimis*.'") (citation and footnote omitted; formatting altered). Accordingly, we find Appellant's claim under Section 312 is waived and, even if not waived, is meritless.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/8/2025