2025 PA Super 172

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT FITZGERALD | : | |
| | : | |
| Appellant | : | No. 1229 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001789-2015

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

OPINION BY BECK, J.:                                    **FILED AUGUST 12, 2025**

Scott Fitzgerald ("Fitzgerald") appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") following the revocation of his probation.  Fitzgerald argues that the trial court wrongly determined that he violated his probation based on its finding that he committed the crime of harassment, as he had never been arrested, charged, or convicted of that offense.  Because we agree that the trial court improperly found Fitzgerald in violation and revoked his probation on this basis, we vacate his judgment of sentence and remand this matter to the trial court.

On September 28, 2014, Fitzgerald was at a bar when he punched Michael Tosto ("Tosto") in the face causing him to fall backwards and hit his head on the ground.  Tosto sustained a concussion, fractured nose, sprained neck, and a cut on the back of his head for which he needed stitches.  On April 29, 2016, the trial court convicted Fitzgerald of aggravated assault, simple

assault, and recklessly endangering another person.  On August 16, 2016, the court sentenced Fitzgerald to eleven-and-a-half to twenty-three months of incarceration, followed by eight years of probation.  Fitzgerald served his term of incarceration on house arrest.

Fitzgerald filed a direct appeal, which he later discontinued.  He subsequently filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"),[1] which the PCRA court dismissed.  This Court affirmed the PCRA court's dismissal of Fitzgerald's petition.  *See Commonwealth v. Fitzgerald*, 2485 EDA 2018, 2019 WL 3384860 (Pa. Super. July 26, 2019) (non-precedential decision).

In March 2024, Fitzgerald's appellate counsel, Todd Mosser, notified the trial court that he had received hundreds of harassing emails from Fitzgerald and that Fitzgerald had also sent emails to the court and his trial counsel, current Philadelphia Municipal Court Judge David Conroy.  N.T., 3/21/2024, at 7, 16-18.  Consequently, the trial court held violation of probation ("VOP") hearings on March 21, 2024 and April 1, 2024.[2]  At the March 21, 2024

---

[1]  42 Pa.C.S. §§ 9541-9546.

[2]  It appears that the trial court initiated revocation proceedings on its own accord, as there is no petition to revoke Fitzgerald's probation from the Commonwealth or the probation department in the record.  *See Commonwealth v. Mayfield*, 247 A.3d 1002 (Pa. 2021) (addressing a case in which the trial court instituted revocation proceedings without the filing of petition to revoke probation); *see also* Pa.R.CrimP. 708(A) ("A written request for revocation shall be filed with the clerk of courts.").

hearing, the trial court introduced and admitted the emails into the record. *Id.* at 7-8. Although the trial court's email system blocked many of the emails Fitzgerald had sent to the court, it was able to retrieve thirteen emails that he had sent the court in the thirty days leading up to the March 21, 2024 hearing. *Id.* at 7, 18. In the emails, Fitzgerald repeatedly made profane and disparaging remarks about the trial court, Judge Conroy, and Attorney Mosser, including racially incendiary statements. *Id.* at 18-19, 24, 27-28. At the April 1, 2024 hearing, the Commonwealth introduced six TikTok videos that Fitzgerald posted to his account between February 8, 2023, and May 25, 2023. N.T., 4/1/2024, at 7-8. In these videos, in addition to making insulting remarks about the trial court's, Judge Conroy's, and Attorney Mosser's appearances, Fitzgerald "vowed … to exact biblical revenge" upon those in the legal system who were involved in his case. *Id.* at 8-12. At the conclusion of the hearing, the trial court found that Fitzgerald had committed the crime of harassment, specifically under 18 Pa.C.S. § 2709(a)(3), (4), and (7),[3] and

_____

[3] Section 2709(a) defines harassment, in relevant part, as follows:

> A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> * * *
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;

*(Footnote Continued Next Page)*

determined that he had violated his probation. *Id.* at 28-29. The same day, the trial court revoked Fitzgerald's probation and sentenced him to five to ten years in prison.

Fitzgerald filed a timely post-sentence motion for reconsideration of his sentence, which the trial court subsequently denied. Fitzgerald then timely appealed to this Court.[4] He presents the following issues for review:

_____

> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;
>
> *       *       *
>
> (7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa.C.S. § 2709(a)(3), (4), (7).

[4] We note that Fitzgerald did not file timely his Pa.R.A.P. 1925(b) statement. On May 20, 2024, the trial court issued an order directing Fitzgerald to file a Rule 1925(b) statement within 21 days. Fitzgerald, however, did not file his Rule 1925(b) statement until June 19, 2024, thirty days after the entry of the trial court's order. "Generally, the failure to comply with an order to file a Rule 1925(b) statement results in waiver of all appellate issues." *Commonwealth v. Pridgen*, 305 A.3d 97, 101 n.4 (Pa. Super. 2023). Importantly, however, Rule 1925(c)(3) states:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been per se ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a concise statement nunc pro tunc, and the preparation and filing of an opinion by the judge.

*(Footnote Continued Next Page)*

1. Did the [trial] court abuse its discretion in sentencing [Fitzgerald] to five to ten years of incarceration for a first alleged technical violation of his probation where such an extended period of total confinement was manifestly excessive under the circumstances?

2. Did the [trial] court abuse [its] discretion by finding that [Fitzgerald] committed a technical violation of his probation where he was not charged with a new crime nor violate a specific condition of probation?

3. Did the [trial] court err by relying on constitutionally protected speech in determining that [Fitzgerald] committed a technical violation of probation?

Fitzgerald's Brief at 4.

We begin with Fitzgerald's second issue as we find it dispositive. In his second issue, Fitzgerald argues that the trial court erred in revoking his probation based on its finding that he had violated his probation by committing the crime of harassment. Fitzgerald's Brief at 9-12. He contends that it was improper for the trial court to revoke his probation based on a finding that he

_____

Pa.R.A.P. 1925(c)(3); *see also Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (en banc) (declining to find the appellant's claims waived on appeal based on Pa.R.A.P. 1925(c)(3)).

In this case, Fitzgerald's counsel, by filing an untimely 1925(b) statement, was per se ineffective. Fitzgerald's counsel did file a request for an extension on the deadline to file a Rule 1925(b) upon which the trial court did not rule. Additionally, the trial court did not comment on the untimeliness of Fitzgerald's 1925(b) statement and, in fact, addressed the issues he raised in his statement. We therefore decline to remand this matter and will review the merits of Fitzgerald's claims. *See Commonwealth v. Andrews*, 213 A.3d 1004, 1010 (Pa. Super. 2019) (declining to find the appellant's claims waived pursuant to Pa.R.A.P. 1925(c)(3) and declining to remand to the trial court because the trial court addressed the issues raised in the appellant's untimely 1925(b) statement).

committed harassment when he was never arrested, charged, or, most importantly, convicted of that criminal conduct. **Id.**

"Our review of a revocation proceeding is limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing." **Commonwealth v. Blango**, 327 A.3d 670, 675-76 (Pa. Super. 2024). "The revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." **Id.** at 675 (citation and brackets omitted).

In support of his argument, Fitzgerald relies on our Supreme Court's decision in **Commonwealth v. Foster**, 214 A.3d 1240 (Pa. 2019). **See** Fitzgerald's Brief at 9-11. In that case, Foster was on probation following his convictions of drug-related crimes. **Foster**, 214 A.3d at 1243. During the probationary period of his sentence, Foster's probation officer saw several photographs Foster had posted on social media depicting "guns, drugs, large amounts of money and his sentencing sheet from his plea agreement[.]" **Id.** The trial court revoked Foster's probation and found that, while the photographs did not prove that he violated a specific condition of his probation, they did demonstrate his "indifference regarding his crimes" and "clearly indicate[ed] that probation was an ineffective vehicle to accomplish his rehabilitation[.]" **Id.** at 1245 (citation omitted). On appeal, this Court affirmed the trial court's revocation of Foster's probation, relying upon

language from ***Commonwealth v. Infante***, 888 A.2d 783 (Pa. 2005), that a probation violation is established if it is "shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." ***Foster***, 214 A.3d at 1251 (citations omitted).

Our Supreme Court granted allowance of appeal and reversed. ***Id.*** at 1248-50. The Court explained that a probation order must specify the length of the term and the conditions of probation at the time of sentencing and "to attach any reasonable conditions" that "it deems necessary to insure or assist the defendant in leading a law-abiding life." ***Id.*** at 1248-49 (citations omitted). Our High Court further explained that in the event of the violation of a condition or probation, "the court cannot resentence the defendant before it makes a finding on the record that a violation has occurred." ***Id.*** at 1249 (citation omitted).

Additionally, the Supreme Court stated that courts may terminate or modify the conditions of probation "at any time" and that the revocation of probation "is sanctioned only upon proof of the violation of specified conditions of the probation." ***Id.*** at 1249-50. Importantly, the Court explained, that after finding a violation and revoking probation, the trial court may only resentence the defendant to a term of incarceration if "(1) the defendant was convicted of a new crime; (2) the defendant's conduct makes it likely that he or she will commit a new crime if not incarcerated; or (3) incarceration "is

essential to vindicate the authority of the court." *Id.* at 1250 (citation omitted).

The Supreme Court therefore held that a VOP court "must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime to be found in violation." *Id.* at 1243. "Absent such evidence, a violation of probation does not occur solely because a judge believes the probationer's conduct indicates that probation has been ineffective to rehabilitate or to deter against antisocial conduct." *Id.*

Applying those principles to the facts at hand, the Supreme Court concluded that the trial court erred in finding that Foster had violated his probation. *Id.* at 1250-52. The Court explained that the sole evidence the Commonwealth presented at the VOP hearing were the photographs and that the VOP made no finding that Foster had violated a specific condition of his probation or had committed a crime. *Id.* at 1253.

Shortly following *Foster*, this Court decided *Commonwealth v. Giliam*, 233 A.3d 863 (Pa. Super. 2020). In that case, six days after pleading guilty to terroristic threats with intent to terrorize and receive a sentence of three years of probation, Giliam was arrested and charged with aggravated assault, simple assault, and resisting arrest, after a police officer allegedly saw him grab his girlfriend by the face and slam her against a wall. *Id.* at 865. Based on these new charges, the VOP court found Giliam violated his probation and thus issued a revocation order and resentenced him to a term of

incarceration. *Id.* at 866. Giliam, however, was subsequently acquitted of his new charges. *Id.*

On appeal to this Court, Giliam argued that we should vacate his VOP sentence after he was acquitted of the new criminal charges underlying the VOP determination, as the new charges were the sole basis for the VOP court's finding that he had violated his probation. *Id.* at 867. This Court determined that "because Giliam's violation of probation was based solely on allegations of new criminal charges for which he was later acquitted, ultimately, no violation of probation occurred" and consequently, his "probation revocation sentence is void." *Id.* at 868. The VOP court, however, asserted that Giliam's VOP sentence should stand, as his new charges indicated that probation was not serving the desired outcome to rehabilitate him and reflected that he was a danger to the public. *Id.* We disagreed, stating that in *Foster*, our Supreme Court clarified that "a VOP court must determine whether a probation violation actually occurred. If it did, only then the court may consider the rehabilitative effectiveness of the probation in deciding whether to revoke the probation." *Id.* at 869.

More recently, in *Commonwealth v. Berry*, 323 A.3d 641 (Pa. 2024), our Supreme Court addressed the question of whether a criminal defendant's prior arrests, which did not result in any convictions, were a permissible factor for courts to consider at sentencing. *Id.* at 647. In that case, Berry was convicted of several crimes related to the sexual abuse of children. *Id.*

Although he had no prior convictions or juvenile adjudications, and thus a prior record score of zero, the trial court imposed a sentence that departed significantly upward from the standard guideline sentencing range. The trial court cited Berry's arrest record—which the court characterized as other previous contacts with the criminal justice system—as a factor. *Id.*

Following its grant of discretionary review, the Supreme Court held that a defendant's arrest history, without resultant convictions, is an impermissible factor for courts to consider at sentencing, finding it "incompatible with settled law establishing that arrests, without convictions, simply have no value as probative matter." *Id.* at 655. Relevantly, the *Berry* Court explained,

> As a general matter, evidence of a defendant's arrest record is inadmissible and irrelevant in nearly every criminal law context. For example, evidence of a criminal defendant's prior arrests is inadmissible as tending to prove the defendant's disposition to commit crimes generally, because the fact of arrest or indictment is quite consistent with innocence. Until 1981, there was an exception to this rule that allowed the Commonwealth to cross-examine a defendant's character witnesses by asking about their knowledge of the defendant's prior arrests, regardless of whether those arrests culminated in a conviction. [W]e abrogated that exception and repudiated all … the cases that endorsed or applied the exception. Instead, we established a bright-line rule that evidence of a defendant's prior arrests is not admissible, even for purposes of impeaching character witnesses, because an arrest is equally consistent with either guilt or innocence. This prohibition is now codified in our rules of evidence.

*Id.* at 648 (quotation marks, brackets, and footnotes omitted); *see also id.* at 649 ("Prior arrests shed no reliable light upon criminal propensity, cannot be used as evidence of bad character or for impeachment purposes, are not a relevant sentencing consideration, and have no probative value for

establishing a defendant's likelihood of recidivism.") (footnotes omitted). Our High Court further expressly stated that "evidence of arrests, without conviction, [are not] relevant in a revocation of probation and re[]sentencing proceeding," and a court could not draw adverse inferences from defendant's arrest record. *Id.* at 649.

Thus, to summarize, under *Foster*, a VOP court may revoke a defendant's probation only if it finds, based on the preponderance of the evidence that the defendant: (1) violated a specific condition of his probation, or (2) committed a new crime. *Foster*, 214 A.3d at 1243. Pursuant to *Giliam*, we must vacate a finding that a defendant violated his probation if the basis for the probation violation is new criminal charges and the defendant is subsequently acquitted of those charges. *Giliam*, 233 A.3d at 868. Additionally, following *Berry*, a defendant's prior arrests, without resulting convictions, is not a factor a VOP court can consider in revoking a defendant's probation and resentencing him. *Berry*, 323 A.3d at 649.

Based on the foregoing, we hold that a VOP court cannot revoke a defendant's probation based on a finding that he engaged in criminal conduct for which he was never arrested, charged, and convicted. It would be entirely at odds with *Berry*, to find that although a prior arrest without conviction cannot be considered by VOP courts, uncharged criminal conduct for which there had not even been an arrest, let alone conviction, could be the basis for a court to revoke probation and resentence the defendant to a period of

incarceration. **See id.** Moreover, to conclude otherwise requires the VOP court to hold a trial within a trial, at which the defendant can essentially be convicted of a crime without the constitutional protections that would be afforded him (for example, the right to a jury trial) if he had been formally charged with the criminal conduct alleged.

In this case, not only was Fitzgerald never convicted of harassment, he was neither arrested nor charged with that offense. Further, the record reflects that the trial court's finding that Fitzgerald had committed harassment was the sole basis for its determination that he had violated his probation. **See** Trial Court Opinion, 10/31/2024, at 2. Accordingly, we conclude that the trial court abused its discretion in finding Fitzgerald in violation of his probation, revoking his probation, and resentencing him to a period of incarceration.[5] We therefore vacate his judgment of sentence and remand this matter to the trial court for proceedings consistent with this decision.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

_____

[5] In light of this determination, we need not address Fitzgerald's remaining issues.

- 12 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2025